JS-6
O

# United States District Court
# Central District of California

| | |
|---|---|
| MICHELLE TRAN, | Case № 2:15-cv-09963-ODW (RAOx) |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION FOR** |
| KANSAS CITY LIFE INSURANCE | **SUMMARY JUDGMENT [15]** |
| COMPANY, a business entity form | |
| unknown; DOES 1 through 20, inclusive, | |
| Defendants. | |

## I.    INTRODUCTION

This case involves the rescission of Luong Quoc Tran's life insurance policy for failure to disclose certain details of his medical history.  Plaintiff Michelle Tran, Mr. Tran's widow, is the policy's beneficiary.  Before the Court is Defendant Kansas City Life Insurance Company's motion for summary judgment.  (ECF No. 15.)  For the following reasons, the Court **GRANTS** the motion in its entirety.

## II.   FACTUAL BACKGROUND

Mr. Tran and Plaintiff were married in 2005 and soon after had a son.  (Tran Decl. ¶ 2, ECF No. 16.)   Seeking to protect his family, Mr. Tran applied for a $300,000 "Flexible Premium Adjustable Death Benefit Life Insurance Policy" with Defendant on July 27, 2014, at the recommendation of Plaintiff's parents.  (Tran Decl. ¶ 3; Augustin Decl., Ex. A–B at 17, 36, ECF No. 15.)   The application required Mr. Tran to answer twenty-three questions about his health.  (Augustin Ex. A at 10.)   One of the questions asked whether he had been "diagnosed" or "treated" for any disease or disorder relating to "diabetes, sugar in the urine" in the ten years preceding the application.  (Id.)   A second question asked whether he had been "diagnosed" or "treated" for any disease or disorder relating to "blood pressure" in the ten years preceding the application.  (Id.)  Mr. Tran answered "no" to both questions.  (Id.)  He also answered "no" to the remaining twenty-one questions about his medical history.  (Id.)

On the same page, Mr. Tran wrote the telephone number of his doctor, Mary Tran, and authorized Defendant to contact and obtain records from Dr. Tran.[1]  (Id.)  Mr. Tran was then subjected to a physical examination.  (Id., Ex. E at 125–127.)   The results of the physical examination were unremarkable and showed Mr. Tran to be in good health.  (Id.)   The underwriting process appears to have been completed on August 8, 2014.[2]  (Id., Ex. B at 74.)  The policy was mailed to Mr. Tran on August 22, 2014.  (Id. at 20.)  Mr. Tran acknowledged receipt of the policy on September 6, 2014.  (Id., Ex. C at 75.)

Mr. Tran died on March 9, 2015, of a heart attack at age thirty-seven.  (Tran Decl. ¶ 8; Augustin Suppl. Decl., Ex. A at 13, ECF No. 17.)   On April 8, 2015, Plaintiff sought payment under the policy.  (Snoddy Decl., Ex. B. at 13–14, ECF No. 15.)  At the same time, Plaintiff granted Defendant permission to access her husband's

---

[1] The parties seem to agree that Dr. Tran was not contacted before the policy was issued.  (Mot. 14, ECF No. 15; Opp'n 7, ECF No. 16.)

[2] This is the date the policy was printed.  (See Augustin Decl., Ex. B at 74.)

medical records for the purpose of investigating the accuracy of his application.  (*Id.*, Ex. D at 18–19.)

Defendant subsequently obtained medical records from Dr. Tran.  (Augustin Suppl. Decl., Ex. A. 13–62.)  These records indicated to Defendant that, contrary to the statements Mr. Tran made in his application, he had been diagnosed and treated for diabetes and high blood pressure in the ten years preceding his application for life insurance.  (*See* Snoddy Decl., Ex. E at 20.)  Accordingly, Defendant sent a letter to Plaintiff on June 23, 2015, denying her claim on the basis of the misrepresentations in Mr. Tran's application.  (*Id.*)

Plaintiff filed this case in the Superior Court of California, County of Los Angeles on November 12, 2015, alleging (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) declaratory relief, an (4) intentional infliction of emotional distress.  (Compl. ¶¶ 24–39, ECF No. 1-2.) Defendant removed the case to federal court on December 30, 2015.  (ECF No. 1.) Defendant filed the pending motion for summary judgment on December 12, 2016. (ECF No. 15.)  The motion is now fully briefed and ready for decision.  (*See* ECF Nos. 16–19.)

### III.   LEGAL STANDARD

Summary judgment shall be entered in favor of the moving party when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party initially bears the burden of showing the non-existence of a material factual dispute.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 321 (1986).  The burden then shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* (quoting Rule 56(e)).  To carry this burden, the non-moving party "must do more than simply show that there is some metaphysical

doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio,* 475 U.S. 574, 586 (1986).   A dispute about a material fact is genuine if a reasonable jury could return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

For the purposes of summary judgment, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in her favor. *Id.,* 477 U.S. at 255; *see also Sischo–Nownejad v. Merced Community College Dist.,* 934 F.2d 1104 (9th Cir.1991).   Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts, are jury functions, not those of a judge [when] he is ruling on a motion for summary judgment." *Anderson, supra,* 477 U.S. at 255.

## IV.   DISCUSSION

**A. Evidentiary Considerations**

Before reaching any of the substantive legal issues in this case, the Court must first resolve several issues of admissibility.  Plaintiff argues that the medical records submitted in support of Defendant's motion are not admissible because they contain private personal information in violation of Federal Rule of Civil Procedure 5.2 and are not properly authenticated by their custodian.   (*See* Plaintiff Objections to Evidence 2–4, ECF No. 16-1.)   Plaintiff also argues that Defendant has submitted documents in "bulk" without pointing to specific facts that support its motion for summary judgment.  (*Id.* at 6.)

To begin, the Court notes that Defendant has taken corrective measures in light of Plaintiff's concerns about disclosure of personal information and authentication. Defendant has submitted with its reply an identical set of the medical documents with Mr. Tran's private personal information redacted and a declaration from the custodian

of records at Dr. Tran's office, Vicki Do.[3]  (*See* Augustin Suppl. Decl., Ex. A.)[4]  The Court finds that these measures adequately address Defendant's concerns and will consider the medical records.[5]

Plaintiff's objection to "bulk" submissions is unclear.  (*See* Plaintiff Objections to Evidence 6.)  Plaintiff does not reference a single case discussing so-called "bulk" submissions.  (*Id.*)  While the Court agrees with Plaintiff that the initial burden is on Defendant to present evidence and facts in support of its motion for summary judgment, Defendant has done so here.  Defendant has highlighted misrepresentations that it believes warrant rescission of the life insurance policy and has put forth a statement of uncontroverted facts and conclusions of law to which Plaintiff has responded.  (*See* Mot. 8–9; Memorandum Statement of Genuine Disputes, ECF No. 16-2.)

**B. Breach of Contract**

Defendant asserts that Plaintiff's breach of contract claim must fail because there is no enforceable contract between the parties—in other words, that Mr. Tran's

---

[3] While the submission of new evidence is not typically allowed in conjunction with a reply, evidence that is merely responsive to issues raised in an opposition may be considered.  *PSM Holding Corp. v. Nat'l Farm Fin. Corp.*, No. CV0508891MMMFMOX, 2013 WL 12080306, at *4 (C.D. Cal. Oct. 8, 2013) (cumulating cases in support of this proposition).  Here, the new evidence is responsive to issues raised for the first time in Plaintiff's opposition and thus the Court will consider the evidence.

[4] In a set of evidentiary objections filed after Defendant's reply, Plaintiff argues that the corrective measures are insufficient because Vicki Do's declaration "cannot be clearly related to the documents that are attached, as there is nothing about the declaration that confirms the records presented are the actual records referred to, or that they are full and complete."  (Objection to Supplemental Declaration 4, ECF No. 20.)  Plaintiff is grasping at straws.  Ms. Do's declaration states that her "office produced a copy of the medical records *attached hereto as Exhibit A*."  (Do Decl., ECF No. 14 (emphasis added).)  The medical documents immediately follow the declaration and are labeled "Exhibit A."  (Augustin Suppl. Decl., Ex. A.)  Plaintiff's argument that these records are incomplete is also without foundation.  (Objection to Supplemental Declaration 4.)  Plaintiff has not explained why she believes that the records are incomplete and a review of the records does not give rise to any such suspicion.

[5] The Court notes that the insurance application remains unredacted.  (Augustin Decl. Ex. A.)  However, the Court finds that striking the application from the evidentiary record is too extreme a measure under the circumstances.  For the protection of Mr. Tran's privacy, the Court will seal the Augustin Declaration and its exhibits.

misrepresentations rendered any contract void *ab initio*. (Mot. 8); *see also* Cal. Ins. Code § 359. Therefore, Defendant has the burden to show that it rightfully rescinded Mr. Tran's policy on the basis of his material misrepresentations. *Salkin v. United Servs. Auto. Ass'n*, 835 F. Supp. 2d 825, 831 (C.D. Cal. 2011), *aff'd sub nom. Salkin v. USAA Life Ins. Co.*, 544 F. App'x 713 (9th Cir. 2013).

As a general matter, California law "permits an insurer to rescind a policy when the insured has misrepresented or concealed material information in connection with obtaining insurance." (*TIG Ins. Co. of Michigan v. Homestore, Inc.* 137 Cal. App. 4th 749, 755–756 (2006); *see also Trinh v. Metro. Life Ins. Co.*, 894 F. Supp. 1368, 1372 (N.D. Cal. 1995) ("Material misrepresentations on an insurance application are grounds for the [life] insurance company to rescind the policy."). Indeed, California Insurance Code Section 331 could not be clearer: "concealment, whether intentional or unintentional, entitles the injured party to rescind insurance." These statements are consistent with California's long-held policy that an insurance company has "the unquestioned right to select those whom it will insure and to rely upon him who would be insured for such information as it desires as a basis for its determination to the end that a wise discrimination may be exercised in selecting its risks." *Am. Gen. Life Ins. Co. v. Green*, No. 2:06-CV02048MCEKJM, 2008 WL 2096833, at *4 (E.D. Cal. May 16, 2008) (quoting *Robinson v. Occidental Life Ins. Co. of Cal.,* 131 Cal. App. 2d 581, 586 (1955)).

Courts have generally applied a three-part test to determine whether an insurance company may rescind a life insurance policy based on material misrepresentations in the application. *See Casey By & Through Casey v. Old Line Life Ins. Co. of Am.*, 996 F. Supp. 939, 944 (N.D. Cal. 1998) (citing *Trinh*, 894 F. Supp. at 1372). The three elements of the test are: (1) whether the applicant made a

misrepresentation; (2) whether the misrepresentation was material; and (3) whether the applicant knew that he made a material misrepresentation.[6]  *Id.*

### 1.  Whether Mr. Tran Made Misrepresentations and Knew of His Ailments

Defendant argues that the medical records indicate, "among other things," that Mr. Tran was diagnosed with diabetes on July 23, 2011, and with hypertension on August 20, 2011.  (Mot. 9.)  Defendant also argues that the medical records indicate he was prescribed medicine for these ailments on August 20, 2011.  (*Id.*)  The Court agrees, finding the medical records submitted by Defendant contain evidence that Mr. Tran was diagnosed and treated for diabetes and hypertension in the ten years preceding his application for life insurance and that he knew of these ailments.

i.   *Evidence of Diabetes*

The medical records obtained from Dr. Tran span a roughly three-year period from June 5, 2010 to April 23, 2014.  (Augustin Suppl. Decl. Ex. A at 14–61.) Proceeding chronologically, the first relevant record is from Mr. Tran's July 23, 2011 visit to Dr. Tran.  This record indicates a diagnosis for "DM II," medical shorthand for diabetes mellitus type 2.[7]  (*Id.* at 44.)  Directly underneath this diagnosis is a note to "Repeat FBS," medical shorthand for the Fasting Blood Sugar test.[8]  (*Id.*)

On August 13, 2011, Mr. Tran had laboratory tests done.  (*Id.* at 19–22.)  The corresponding laboratory report shows glucose levels consistent with diabetes and includes a stamp on the final page indicating that someone from Dr. Tran's office called Mr. Tran regarding the results.  (*Id.* at 20, 22.)  A record from Mr. Tran's August 20, 2011 visit to Dr. Tran indicates a diagnosis of "DM II."  (*Id.* at 43.)  This

---

[6] The third element is not about whether the misrepresentation itself was intentional or unintentional, it is about whether the applicant knew or "appreciated" that he had the undisclosed condition.  *See generally Casey*, 996 F. Supp. at 949.

[7] *See Medical Abbreviations,* Taber's Online, http://www.tabers.com/tabers online/view/Tabers-Dictionary/767492/0/Medical_Abbreviations (last accessed January 2, 2017); *see also Gonzales v. Comm'r of Soc. Sec. Admin.*, No. CV 14-0078-JPR, 2015 WL 685347, at *4 n.5 (C.D. Cal. Feb. 18, 2015) (citing Taber's as authority for medical abbreviations).

[8] *See Medical Abbreviations,* Taber's Online, http://www.tabers.com/tabers online/view/Tabers-Dictionary/767492/0/Medical_Abbreviations (last accessed January 2, 2017).

1  record also appears to include a notation relating to a drug prescription that begins
2  with the prefix "gluco."[9]  (*Id.*)

3      Next, a record from Mr. Tran's April 13, 2013 visit to Dr. Tran indicates a
4  diagnosis of "DM II" and that Mr. Tran was "off meds" for "DM II."  (*Id.* at 42.)  That
5  same day, Mr. Tran had additional laboratory tests done.   (*Id.* at 17.)   The
6  corresponding report shows hemoglobin a1c levels "consistent with diabetes."  (*Id.*)
7  This report also includes a stamp on the final page indicating that someone from Dr.
8  Tran's office called Mr. Tran regarding the results.  (*Id.* at 18.)  A record from Mr.
9  Tran's May 5, 2013 visit to Dr. Tran also indicates a diagnosis of "DM II."  (*Id.* at
10  41.)  Finally, a record from Mr. Tran's April 23, 2014 visit to Dr. Tran indicates a
11  diagnosis of "DM II" with the related notation "not take meds."  (*Id.* at 40.)

12      ii.   *Evidence of Hypertension*

13      The first medical record referencing Mr. Tran's high blood pressure is from
14  June 5, 2010.  (*Id.* at 38.)  A record from Mr. Tran's visit to Dr. Tran on that day has a
15  note indicating "⬆BP."[10]  (*Id.*)  Next, a record from Mr. Tran's August 20, 2011 visit
16  to Dr. Tran indicates a diagnosis of "HTN," medical shorthand for hypertension.[11]
17  (*Id.* at 43.)  Finally, a record from Mr. Tran's April 13, 2013 visit to Dr. Tran, also
18  indicates a diagnosis for "HTN" and that he is "off meds" for the ailment.  (*Id.* at 42.)

19      iii.   *Conclusions*

20      In summary, Dr. Tran's records show five occasions on which she diagnosed
21  Mr. Tran with diabetes (including July 23, 2011) and at least two occasions on which
22  she diagnosed Mr. Tran with hypertension (including August 20, 2011).  The records
23  also support Defendant's argument that Mr. Tran at one time took medication for
24  these ailments (presumably if he was "off meds" for the ailments, he was at one time

---

25  [9] The Court is unable to read the remainder of the word due to the poor quality of the reproduction.
26  [10] The abbreviation "BP" is a medical common shorthand for blood pressure.  *See Medical*
27  *Abbreviations,*   Taber's   Online,   http://www.tabers.com/tabers   online/view/Tabers-
   Dictionary/767492/0/Medical_Abbreviations (last accessed January 2, 2017).
28  [11] *See Medical Abbreviations,* Taber's Online, http://www.tabers.com/tabers online/view/Tabers-
   Dictionary/767492/0/Medical_Abbreviations (last accessed January 2, 2017).

"on meds" for the ailments).   Therefore, the Court finds that Mr. Tran made misrepresentations in conjunction with his life insurance application when he indicated that he had not been diagnosed with, or treated for, a disease or disorder relating to diabetes or blood pressure in the previous ten years.

Further, evidence supports the conclusion that Mr. Tran knew about his ailment. Both ailments appear to have been diagnosed more than once and to have existed over a multi-year period.   *Philp v. Jackson Nat'l Life Ins. Co.*, 107 F.3d 878 (9th Cir. 1997) (finding applicant appreciated or knew of ailment where he had a "long medical history" of ailment).   Additionally, Mr. Tran appears to have been contacted about laboratory test results that showed glucose and hemoglobin a1c levels consistent with diabetes.   (Augustin Suppl. Decl. Ex A at 18, 22.)   Moreover, as discussed above, the records suggest that Mr. Tran took medication for the two ailments.   *Freeman v. Allstate Life Ins. Co.*, 253 F.3d 533, 537 (9th Cir. 2001) (finding where applicant had ailment for several years and was taking medication for it, she "must have realized" she had the condition).

The Court finds that Defendant has not put forth sufficient evidence to create a genuine dispute of material fact as to these two prongs of the test.   Plaintiff has offered her own declaration and the declaration of David Burgess, an independent insurance underwriter, as evidence that Mr. Tran did not make a misrepresentation.   In Plaintiff's declaration she alleges that Mr. Tran did not have diabetes or high blood pressure from 2012 until he applied for life insurance in July 2014.   (Tran Decl. ¶ 4– 5.)   First, Plaintiff, as a layperson, is not qualified to make medical assessments or diagnoses.[12]   *See* Fed. R. Evid. 701(c); *see also Clark v. Thomas*, No. 2:09-CV-02272-JAD, 2014 WL 2573738, at *7 (D. Nev. June 6, 2014) ("The Ninth Circuit recognizes that lay witnesses (i.e., people who are not qualified medical-care providers) may not provide any medical diagnosis because 'medical diagnoses are beyond the competence

---

[12]   While Plaintiff may properly offer her personal observations about Mr. Tran's symptoms, disposition, or appearance, she does not offer those insights here; Plaintiff offers her own diagnoses. *See* Fed. R. Evid. 701(a).

of lay witnesses to make.'")  Second, her declaration does not discuss the period from 2011 to 2012 during which Mr. Tran appears to have been diagnosed with both diabetes and hypertension.  (*See* Augustin Suppl. Decl., Ex. A at 43, 44.)

Plaintiff also presents the declaration of David Burgess, an independent insurance underwriter, who argues that Mr. Tran may have been confused by the diabetes question and that he may have answered the question truthfully because diabetes is neither a disease nor a disorder, "it is a condition."  (Burgess Decl. ¶¶ 11–12, ECF 16-4.)  First, it does not matter whether the question was confusing or not because the misrepresentation need not be intentional; an unintentional misrepresentation may still be grounds for rescission.  *See* Cal. Ins. Code § 331; *Barrera v. State Farm Mut. Automobile Ins. Co.*, 71 Cal.2d 659, 665–666, fn. 4 (1969) (finding that an insurer may rescind a policy for material misrepresentation "even though the insured's misstatements were . . . the product of innocence.").  Second, the Court does not agree that the question is in any way confusing.  Burgess argues that the question is confusing because it reads "diabetes (sugar in urine)" making it seem like only a specific subset of diabetes is at issue.  (Burgess Decl. ¶ 12.)  The problem is that the question *does not* read like that; the actual question reads "diabetes, sugar in urine?"  (*See* Augustin Decl., Ex. A at 10.)  As actually written, with the comma and without the parenthesis, there is no doubt that the question is asking whether Mr. Tran had a disease or disorder relating to diabetes *or* sugar in his urine.  (*Id.*)  Additionally, even if the question was confusing and this confusion qualified as grounds for nullifying the answer, that still does not address the misrepresentation Mr. Tran made about whether he suffered from a disease or disorder related to blood pressure.  Finally, Burgess is not qualified to make statements regarding whether diabetes is a disease, disorder, or a condition.  While Burgess may qualify as an expert in the context of insurance underwriting, he is a layperson for the purpose of making medical determinations.  *See* Fed. R. Evid. 701(c).  In conclusion, the Court finds that

Defendant has met its burden with regard to elements one and three of the rescission test.  *See Casey*, 996 F. Supp. at 944.

### 2. Materiality

"The materiality of a misrepresentation is a question of law."  *Id.* (quoting *Merced County Mut. Fir. Ins. Co. v. State*, 233 Cal. App. 3d 765, 772 (1991).  There are two tests for materiality.  *Casey*, 996 F. Supp. at 948.  Under the first test, any answer to a specific question in an application for insurance is material: "[t]hat the insurer puts questions in writing and asks for written answers has itself been deemed proof of materiality."  *Trinh*, 894 F. Supp. at 1373 (quoting *Taylor v. Sentry Life Ins. Co.*, 729 F.2d 652, 655 (9th Cir.1984)).  Under the second test '[m]ateriality is determined by the probable and reasonable effect that truthful disclosure would have had on the insurer in determining the advantages of the proposed contract.'"  *Id.*  In other words, a court must ask whether the insurer's decision to issue the relevant policy would have been affected by having access to the correct information.  *Lunardi v. Great-W. Life Assurance Co.*, 37 Cal. App. 4th 807, 828 (1995) ("Essentially, [a court] must decide whether the insurer was misled into accepting the risk or fixing the premium of insurance.") (internal quotations omitted).  Because this test is subjective, a declaration from the insurer's underwriter indicating that coverage would not have been offered but for the misrepresentation is typically sufficient to satisfy the test.  *Nieto v. Blue Shield of California Life & Health Ins. Co.*, 181 Cal. App. 4th 60, 77 (2010) ("This is a *subjective* test; the critical question is the effect truthful answers would have had on [the actual insurer] . . . .") (emphasis in original) (quoting *Imperial Casualty & Indemnity Co. v. Sogomonian*, 198 Cal. App. 3d 169, 181 (1988)); *see also Trinh*, 894 F. Supp. at 1373 (citing declarations as sufficient).

Defendant has easily satisfied the first test for materiality.  Defendant asked specific questions about Mr. Tran's medical history on the application for life insurance.  (*See* Augustin Decl. Ex. A.)  This is by itself sufficient to establish materiality.

However, Defendant also prevails under the second test.  Defendant submits the declaration of its chief underwriter Michael Augustin indicating that had Mr. Tran completed the application "truthfully and accurately" he "would not have been able to provide evidence of insurability to Kansas City Life satisfactory to offer coverage as issued."  (Augustin Decl. ¶ 19.)  While this statement is certainly not as clear as it could be, the Court takes it to mean that Defendant would not have offered Mr. Tran the policy it did with knowledge of his true medical history.  The Court finds it reasonable that an insurer would consider previous diagnoses for diabetes and hypertension material in deciding whether to offer a life insurance policy.  Because this test is "subjective" and the insurer that issued the policy to Mr. Tran would not have done so with the correct information, the Court finds that Defendant has established materiality under the second test.[13]  In conclusion, Defendant has met its burden to show materiality regardless of which of the two tests is applied.

## C. Defenses to Rescission

### 1. Waiver

Plaintiff argues that Defendant waived the right to rescind Mr. Tran's policy when it failed to adequately investigate the accuracy of his application before issuing the policy.  (Opp'n 3–5.)  However, in California "an insurer has no independent duty to investigate facts in an insurance application."  *Philp*, 107 F.3d 878 (citing *S.F. Lathing Co. v. Pennsylvania Mut. Life Ins. Co.,* 300 P.2d 715, 719 (Cal. Ct. App. 1956)).  Put even more succinctly, "an insurer may rescind an insurance contract for material misrepresentations even if the insurer issued the policy without investigating the applicant's medical history."  *Id.* (quoting *Cohen v. Pennsylvania Mut. Life Ins.*

---

[13] Plaintiff's expert David Burgess speculates that Defendant would have issued Mr. Tran the same policy at the same price even if he had disclosed his true medical history.  (Burgess Decl. ¶ 25.)  However, the Court need not resort to speculation where Defendant's chief underwriter has expressly indicated under penalty of perjury that Mr. Tran *would not have qualified for the policy* if he had disclosed his true medical history.  (Augustin Decl. ¶ 19.)  As the test is subjective, and is focused solely on the impact the misrepresentation would have had on the particular insurer in question, the Court finds the declaration of Defendant's underwriter is completely dispositive on this issue.  *Nieto*, 181 Cal. App. 4th at 77.

1  *Co.*, 312 P.2d 241, 245 (Cal.1957) and *Old Line Life Ins. Co. v. Superior Court*, 229
2  Cal. App. 3d 1600, 1606 (Ct. App. 1991)).

3      Waiver of the right to rescind for misrepresentation is only appropriate in the
4  rare instance that the insurer is actually aware of a misrepresentation in the application
5  and chooses to enter into the contract anyway. *DiPasqua v. Cal. W. States Life Ins.*
6  *Co.* 106 Cal. App. 2d 281, 284–285 (1951). It is undisputed that Defendant did not
7  have actual knowledge of Mr. Tran's true medical history before issuing the policy.
8  Therefore, Defendant did not waive the right to rescind based on an initial failure to
9  obtain Mr. Tran's medical records.[14]

10  **2. Post-claim Underwriting**

11      Plaintiff also argues that Defendant cannot rescind the policy based on
12  information, in this case medical records, it acquired after the policy became effective.
13  However, as Defendant points out, post-claim underwriting is not a defense to
14  rescission in the life insurance context. (Mot. 11.) Life insurers in California, unlike
15  health insurers, may engage in post-claim underwriting during the policy's contestable
16  period. *Salkin*, 835 F. Supp. 2d at 834 (finding life insurers are exempt from
17  prohibition on post-claim underwriting); *Salkin*, 544 F. App'x at 715 (agreeing with
18  district court that life insurers are exempt from prohibition on post-claim
19  underwriting).

20      Courts have repeatedly allowed so-called post-claims underwriting in the event
21  that a policy holder dies within their life insurance policy's contestable period.
22  *Freeman*, 253 F.3d at 537 (affirming a district court decision in favor of insurer that
23  rescinded life insurance based on a misrepresentation in the application that was
24  discovered during contestable-period investigation); *Salkin*, 835 F. Supp. 2d at 835

25  _____

26  [14] Even if there was a requirement to investigate the veracity of an applicant's answers in an
   application for insurance, Defendant conducted a reasonable investigation by subjecting Mr. Tran to
27  a physical examination. (*See* Augustin Decl. Ex. E at 125–127.) Because the physical examination
   revealed no diseases or disorders of consequence, it is hardly surprising that Defendant would have
28  ended its investigation before requesting health records from Dr. Tran.

1 (granting summary judgment in favor of insurer that rescinded life insurance based on
2 a misrepresentation in the application that was discovered during contestable-period
3 investigation). Indeed, at least one court has gone so far as to term such investigations
4 "standard" procedure. *Yang v. Peoples Benefit Ins. Co.*, No. CIV F 06-458 AWIDLB,
5 2007 WL 1555749, at *2 (E.D. Cal. May 25, 2007) (referring to contestable period
6 investigation that involved obtaining medical records for the purpose of evaluating
7 potential misrepresentations in a life insurance application as "standard.") Here, it is
8 undisputed that the records were obtained with Plaintiff's permission during the
9 policy's two-year contestable period. Thus, Plaintiff's post-claims underwriting
10 defense fails. As there is no issue of material fact and Defendant has proven as a
11 matter of law that it properly rescinded Mr. Tran's life insurance policy, the Court
12 **GRANTS** its motion for summary judgment as to the breach of contract claim.

13 **D. Remaining Claims**

14      Plaintiff's claims based on the breach of the implied covenant of fair dealing,
15 declaratory relief, and intentional infliction of emotion distress all fail because her
16 breach of contract claim fails. As Defendant points out, where there is no breach of
17 contract there can be no breach of the implied covenant of good faith and fair dealing.
18 *See San Diego Housing Comm'n v. Indus. Indem. Co.,* 68 Cal. App. 4th 526, 544
19 (1998) ("Where a breach of contract cannot be shown, there is no basis for finding a
20 breach of the covenant."). Likewise, because the Court finds that the contract was
21 properly rescinded, it cannot declare that a valid contract presently exists between the
22 parties. As such, the claim for declaratory relief fails. Finally, the emotional distress
23 claim fails because Defendant's actions were not "extreme and outrageous" in
24 rescinding Mr. Tran's life insurance policy. *See Nichols v. Nw. Mut. Life Ins. Co.*, 487
25 F. App'x 339, 342 (9th Cir. 2012) (citing *Christensen v. Superior Ct.,* 54 Cal.3d 868,
26 903 (1991)); *see also Hailey v. California Physicians' Serv.*, 158 Cal. App. 4th 452,
27 476 (2007) ("a plan does not subject itself to liability for intentional infliction of
28 emotional distress by attempting in good faith to assert its perceived legal right to

rescind a [insurance] contract, even if it is likely the subscriber will suffer emotional distress.")  To summarize, the Court **GRANTS** Defendant summary judgment on the breach of implied covenant of good faith and fair dealing claim, the declaratory relief claim, and the intentional infliction of emotional distress claim.[15]

## V.  CONCLUSION

For the above reasons, the Court **GRANTS** Defendant's motion for summary judgment in its entirety.  The Clerk of Court shall dismiss the action.

**IT IS SO ORDERED.**

January 5, 2017

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**

---

[15] The Court also notes that Plaintiff failed to make any mention her declaratory relief or intentional infliction of emotional distress claims in her opposition to summary judgment.